## FARKAS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12231.

United States Court of Appeals
Fifth Circuit.

Oct. 30, 1948.

McCORD, Circuit Judge, dissenting.

———◆———

Joseph B. Brennan, Elbert P. Tuttle and Norman Stallings, all of Atlanta, Ga., and Leonard Farkas, of Albany, Ga., for petitioner.

Melva M. Graney, George A. Stinson, Ellis N. Slack, and Helen Goodner, Sp. Assts. to the Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, and John W. Smith, Sp. Atty., both of Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The undisputed facts in this case were succinctly stated by The Tax Court.[1]

---

[1] Petitioner is a lawyer residing in Albany, Georgia. Petitioner is unmarried and one of eight children of Sam Farkas who died testate in 1915.

By will, petitioner's father set up a testamentary trust, under the terms of which the income was to be paid to the testator's eight children for life. The will provided that the trust was to continue during the life of the eight children and until the testator's youngest grandchild attained the age of 21 years, at which time the trust was to terminate and the estate was to be divided among the direct descendants of the testator per stirpes.

Item 18 of the will provided that if any of the children should attempt to divest themselves of the beneficial interest to which they were entitled, such child would forfeit his right in the estate and his interest would terminate and be divided among the remaining heirs.

Five of the eight children, including petitioner, were appointed trustees of the testamentary trust and also executors under the will of the decedent.

The testamentary trust established un-

The Commissioner determined that the petitioner was taxable on the entire ⅛ share of the income from his father's testamentary trust notwithstanding the assignment and transfer of the entire interest of the taxpayer of all the income, profits, and dividends therefrom during the existence of the trust, on the theory that petitioner did not transfer income-producing property, but that the transfer was merely an assignment of the right of the taxpayer to receive income for such limited period and was merely an anticipatory assignment of future income and taxable to the donor, as such, under the decisions in Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed.

---

der the will of petitioner's father continued in existence throughout the taxable year 1943.

In 1943 petitioner was 53 years old and was worth about $500,000. His closest relatives were his brothers and sisters.

On January 8, 1943, petitioner executed the following trust instrument:

"For, and in consideration of One Dollar, I hereby transfer, assign and convey all my right, title and interest to the profits, dividends or income from the Estate of Sam Farkas as provided by the Will of Sam Farkas to be paid to each heir, to my brother Mack Farkas, in trust. This trust to terminate within ten years from the date hereof, or upon the death of Mack Farkas.

"The income from said Estate is to be used by my brother Mack Farkas to aid any of my brothers or sisters in educating their children, or in sickness or financial reverses, or extraordinary needs. I leave it entirely to my brother Mack Farkas, Trustee, to determine the amount and to whom he shall make gifts, giving him absolute discretion in the matter, and giving him authority to dispose of all the income hereby conveyed, or any part thereof just as he sees fit, provided no portion of which shall go to the undersigned.

"At the termination of this trust whatever amount that may have been accumulated by said Trustee from the interest hereby conveyed may be disposed of by him, if living, as he sees fit, or by Will, whether for the use or benefit of my brothers and sisters, or not, making him the sole arbiter to determine how and in what way he shall dispose of same, provided no portion of which shall go to the undersigned."

Mack Farkas, the trustee, was 58 years old in 1943 and had a life expectancy under the American Experience Table of Mortality of 15.39 years.

Petitioner filed a gift tax return for 1943 in which he reported a gift of his one-eighth interest in the estate of Sam Farkas at a value of $26,473.59.

The testamentary trust created by petitioner's father reported its income on the basis of a fiscal year ended April 30. Petitioner reported his income on the calendar year basis.

A one-eighth share of the income of the testamentary trust distributable to petitioner in 1943 was $7,791.79. Since petitioner set up the inter vivos trust within the fiscal year of the testamentary trust, the sum of $5,400.88 was paid to petitioner and the balance of $2,390.91 was paid to Mack Farkas, trustee of the inter vivos trust.

Petitioner reported the $5,400.88 in his individual income tax return for 1943. The return disclosed net taxable income of approximately $40,300.

Mack Farkas, trustee of the inter vivos trust, reported the $2,390.91 received from the testamentary trust in a fiduciary return which disclosed distributions to eleven beneficiaries in the total amount of $1,822.52.

In September 1945 Mack Farkas, trustee under the inter vivos trust, instituted a friendly suit in the Superior Court of Georgia against the beneficiaries of the testamentary trust set up by petitioner's father to determine the validity of the inter vivos trust created by petitioner on January 8, 1943, in light of Item 18 of the testator's will prohibiting a beneficiary from transferring his interest under the testamentary trust and providing that such an attempted transfer should forfeit the right of the beneficiary in the estate. Decision was finally rendered on July 2, 1946, by the Supreme Court of Georgia in Farkas v. Farkas, 200 Ga. 886, 38 S.E.2d 924, holding that the trust deed executed by petitioner on January 8, 1943, did not forfeit petitioner's interest in the testamentary trust set up by his father, and that Mack Farkas, trustee under the inter vivos trust created by petitioner, was entitled to petitioner's share of the income of the testamentary trust.

Respondent determined that the full amount of $7,791.79, distributable by the testamentary trust to petitioner in 1943 was taxable to petitioner and increased the amount of income reported by petitioner for 1943 by the $2,390.91 reported by Mack Farkas, trustee of the inter vivos trust.

1055, and Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655. The Tax Court, with four judges dissenting, sustained the Commissioner.

The petitioner insists that he conveyed to the trust an equitable interest in the testamentary trust of his father, and that such equitable interest so conveyed was substantial in that it carried with it all the right, title, and interest in and to profits, dividends, or income, for a ten-year period, which he, the petitioner, had in the testamentary trust, and was, therefore, not merely an anticipatory assignment of future income.

The rights so assigned by the taxpayer were co-extensive with the rights that he held under the trust of his father, with the exception that his interest in his father's trust would not terminate upon the death of Mack Farkas, the trustee of the inter vivos trust, but only upon the death of the taxpayer, or when the youngest grandchild of Sam Farkas should attain his majority.

■ No right to control, or to revoke, the trust or to receive the income therefrom was retained in the settlor, such as provoked the doctrine announced in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, and similar cases. The fact that the thing assigned could revert to the settlor upon the death of the trustee, standing alone, would not, in our opinion, render the income from the trust taxable to the settlor. We know of no case holding otherwise.

In the absence of the power to command or to enjoy the income or any benefits therefrom left in the settlor, and in the absence of any finding on the part of The Tax Court—or in the absence of any evidence to support a finding—that the transfer was but a sham or a shadow having no substance, whereby taxpayer sought to evade taxes on income that in reality belonged to him, it is essential for us to decide whether the transfer in question was of an equitable interest in a trust estate as defined and adjudged in Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, and not merely an anticipatory assignment of future income as that term was expanded and defined in Helvering v. Horst, supra, and Helvering

v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81, and, if so, to what extent, if any, this case is ruled by the pronouncement in Harrison v. Schaffner, supra, that a gift by a life beneficiary of a right to receive a specified amount of income for the period of one year from the trust was an anticipatory assignment of future income, and not a transfer of a substantial equitable interest in the trust estate.

Whether the interest in the testamentary trust that the taxpayer assigned was an equitable interest in property is hardly an open question here. The Supreme Court in the Blair case, supra, and the Supreme Court of Georgia, in Farkas v. Farkas, 200 Ga. 886, 38 S.E.2d 924, as well as The Tax Court in this case, have each considered such a transfer to have been of an equitable interest in the trust estate. Counsel for the Commissioner likewise deems the assignment to have been of such an interest.

■ The holding in the Blair case, supra, to the effect that such an assignment is of an equitable interest in the trust estate, and that the income should follow the property, is controlling, unless Helvering v. Clifford or Harrison v. Schaffner, supra, has nullified such holding in the Blair case. As we view it, the Clifford and Schaffner cases have not rejected the concept that such a transfer is of an equitable interest, but those cases have made it clear that such a disposition of such property must be substantial and not merely colorable, and that when a transfer retains in the transferor the characteristics of ownership, or is only for a day, a month, or a year, it will be regarded as if no disposition had been made at all. The test here, therefore, is whether or not the transfer, which: (a) could run for approximately ten years, or until the death of the trustee, or for a considerable portion of the life expectancy of the donor; (b) was irrevocable by the settlor; (c) prohibited the settlor from obtaining any of the income or accumulations thereof; (d) gave the trustee absolute direction and control of the disposition of the income among the beneficiaries; (e) in no wise relieved the settlor of any duty of support of members of his family; and (f) retained in settlor no characteristics of ownership; was substantial

within the contemplation of the Schaffner case.[2]

■ We conclude that since: (a) the decisions and admissions show that the interest transferred was an equitable interest in the testamentary trust estate; (b) there was a complete renunciation by the settlor of any benefit or control of the property; (c) the trust was not one of an unreasonably short duration but was for a large portion of settlor's life expectancy; we should hold that the transfer was a substantial disposition of property and not merely the anticipatory assignment of future income. See C. I. R. v. Jonas, 2 Cir., 122 F.2d 169, and United States v. Pierce, 8 Cir., 137 F.2d 428, 148 A.L.R. 1228.

The decision of The Tax Court is reversed.

HUTCHESON, Chief Judge (concurring).

To the reasons given in the majority opinion for reversing the decision of the Tax Court, I add one other. This is that, though Treasury Regulations 111, Sec. 2922 as added by T. D. 5488 and 5567, apply authoritatively only to years beginning after Dec. 31, 1945, and are, therefore, not controlling here but merely informative, they furnish, I think, conclusive support to the "judicial determination" we have made that the income from the assigned trust interest is not taxable to the grantor. They do this by fixing for the future the line within which, though assigned, trust income is taxable to the grantor as substantial owner thereof at within ten years "commencing with the date of the transfer", thus extending protection to assignments, the duration of which is almost, if not quite, identical with that of the assignment in this case. This is so equally whether, as contended by petitioner, the period fixed in the assignment falls within, or as contended by the commissioner, just without the protection of the regulation.

In Harrison v. Schaffner, 312 U.S. 579, at page 582, 61 S.Ct. 759, 85 L.Ed 1055, the Supreme Court declared: "We think that the gift by a beneficiary of a trust of some part of the income derived from the trust property for a period of a day, a month or a year involves no such substantial disposition of the trust property as to camouflage the reality that he is enjoying the benefit of the income from the trust of which he continues to be the beneficiary, quite as much as he enjoys the benefits of interest or wages which he gives away as in the Horst and Eubank cases."

but it went on to say: "Nor are we troubled by the logical difficulties of drawing the line between a gift of an equitable interest in property for life effected by a gift for life of a share of the income of the trust and the gift of the income or a part of it for the period of a year as in this case. 'Drawing the line' is a recurrent difficulty in those fields of the law where differences in degree produce ultimate differences in kind. See Irwin v. Gavit, 268 U.S. 161, 168, 45 S.Ct. 475, 476, 69 L.Ed. 897. It is enough that we find in the present case that the taxpayer, in point of substance, has parted with no substantial interest in property other than the specified payments of income which, like other gifts of income, are taxable to the donor. *Unless in the meantime the difficulty be resolved by statute or treasury regulation, we leave it to future judicial decisions to determine precisely where the line shall*

---

[2] In Harrison v. Schaffner, the Court, speaking through Mr. Justice Stone, said [312 U.S. 579, 61 S.Ct. 762]: "Nor are we troubled by the logical difficulties of drawing the line between a gift of an equitable interest in property for life effected by a gift for life of a share of the income of the trust and the gift of the income or a part of it for the period of a year as in this case. 'Drawing the line' is a recurrent difficulty in those fields of the law where differences in degree produce ultimate differences in kind. See Irwin v. Gavit, 268 U.S. 161, 168, 45 S.Ct. 475, 476, 69 L.Ed. 897.

It is enough that we find in the present case that the taxpayer, in point of substance, has parted with no substantial interest in property other than the specified payments of income which, like other gifts of income, are taxable to the donor. Unless in the meantime the difficulty be resolved by statute or treasury regulation, we leave it to future judicial decisions to determine precisely where the line shall be drawn between gifts of income-producing property and gifts of income from property of which the donor remains the owner, for all substantial and practical purposes."

*be drawn between gifts of income-producing property and gifts of income from property of which the donor remains the owner, for all substantial and practical purposes."* (Emphasis supplied.)

Following the suggestion in that decision, the Treasury has drawn the line of unsubstantiality for the future as within ten years. Assuming that the regulation is valid and controlling, how can it reasonably be said that an assignment, which at worst for petitioner falls just within the line so fixed, is an unsubstantial assignment. It must be remembered that Treasury regulations are not arbitrary fiats, but are valid only when they neither add to nor subtract from the statute. It must be remembered, too, that we are admonished by the Supreme Court that, until the difficulty of drawing the line is "resolved by statute or Treasury regulation", it must be left "to future judicial decision to determine precisely where the line shall be drawn". With these remembrances in mind, it must, we think, be said of a judicial determination, made before the regulations take effect, that the assignment in this case is not substantial, would be drawing far too fine a bead, would, in short, be to unreasonably attribute to administration a keenness of perception denied to judging.

McCORD, Circuit Judge (dissenting).

I have no quarrel with my learned brothers as to the principles of law applicable to this case. I just cannot bring myself to agree with their holding that petitioner, through the medium of the ten year inter vivos trust for the benefit of his relatives, has parted with a substantial interest in the trust corpus which precludes the application of the rule announced in Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055. I do not view the transfer in question as a substantial disposition of the trust property, but consider it a mere anticipatory assignment of future income, taxable to the donor. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055. The majority opinion limits too strictly the principles enunciated in the Blair and Schaffner cases. The Schaffner and similar cases clearly established that one is taxable upon income which he assigns, when he nevertheless retains a substantial interest in the income-producing property. Although the Blair case defines the right of a life beneficiary to receive income from the trust corpus as an equitable interest in the trust estate, it merely holds that where the donor transfers and irrevocably releases his full future interest in all or part of the trust income, he has thereby conveyed and assigned such equitable interest in the trust property. It does not hold that when the donor transfers substantially less than all of his future interest in the income assigned, he should not be taxed on the income therefrom. Here, petitioner did not assign all of his future interest in the testamentary trust income to the inter vivos trust, but retained his right to receive it again after a ten year period, or before ten years, in the event of the trustee's death during that time. The record clearly reveals, and the Tax Court found, that petitioner was a man of considerable financial means, and that at the time of the transfer he wanted to make a "gift" of the trust income to the other less fortunate members of his family in a manner that would prevent him from being liable for income tax on the income assigned. Instead of retaining the income from the testamentary trust himself, and making outright gifts to them from it, with no strings attached, he chose the ingenious device of the ten year inter vivos trust, with federal income tax consequences in mind. Under such circumstances, I do not think we should view the present transfer as a substantial disposition of the trust property, merely because the transfer was presumably irrevocable for a ten year period. Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055.

I am well aware that it is not the function of courts, by judicial fiat, to attempt enactment of remedial tax legislation. I am further aware that every taxpayer has a constitutional privilege to minimize his tax liability through lawful tax avoidance. Nevertheless, I have never favored decisions which encourage loopholes in our tax laws and enable taxpayers, through the medium of ten year inter vivos trusts or otherwise, to transfer excess income and

thereby retreat to lower tax brackets during prosperous and high tax years, and later to retrieve that same source of income in lean years, when income taxes are usually much lower.

I respectfully dissent.