**THUET v. RIDDELL, Collector of Internal Revenue.**

No. 13519.

United States District Court
S. D. California, Central Division.

April 18, 1952.

Marcus L. Roberts, Hollywood, Cal., for plaintiff.

Walter S. Binns, U. S. Atty., E. H. Mitchell and Edward R. McHale, Asst. U.

S. Attys., Eugene Harpole and Frank W. Mahoney, Sp. Attys., Bureau of Internal Revenue, Los Angeles, Cal., for defendant.

WESTOVER, District Judge.

In 1950 Emma Thuet, then eighty-four years of age, created the following Trust:

*"Trust Created for Religious and Charitable Purposes*

"I, Emma Thuet, in thanksgiving to God for having brought me into existence, and out of appreciation for all of the things I received through His divine providence, do hereby set aside the hereinafter-described property and provide that whatever portion thereof has not been withdrawn for my own benefit during my lifetime, shall, upon my death, be devoted to God and His Holy works, and to that end I do hereby give to the Catholic Foreign Mission Society of America, Inc., a religious and non-profit corporation, the sum of Five Thousand Dollars ($5,000.00), in trust however for the following uses and benefits, namely, to hold, manage, invest, reinvest and distribute the same as hereinafter set forth.

"Beginning with the first day of January, 1950, said Society shall distribute to me out of the corpus of the trust estate, the sum of Three Hundred Dollars ($300.00) per year, in equal semi-annual installments, until the corpus of said trust estate is exhausted, or until the time of my demise, should it first occur.

"This trust shall under no circumstances extend beyond the time of my demise, and upon the termination of said trust by death, all the trust funds and estate then on hand, together with all accumulations or income therefrom, shall go, vest in, be paid and distributed to said Society for the religious and charitable purposes for which it was formed.

"I hereby give said Society full power and authority to hold in its own name securities belonging to the trust estate, and to manage said trust estate as it sees fit, hereby vesting it with

absolute discretion, free of all legal restrictions or limitations of any kind or nature whatsoever, in the investment or reinvestment of said trust funds, at the risk of said trust estate.

"I hereby give said Society the right to receive additional property and money from me, or from any other person, by will or otherwise, as a part of the trust estate.

"I hereby agree and provide that all the income derived from the use or investment of said trust funds shall go, belong to and be paid, to said Society as and when the same accrues.

"I hereby provide and agree that this trust agreement shall be irrevocable and non-assignable, by operation of law or otherwise.

"Executed in duplicate this first day of January, 1950.

"Emma Thuet

"Acceptance of the above trust is hereby acknowledged.

"Catholic Foreign Mission Society of America, Inc.,
"By Bishop Raymond A. Lane
"President
"(Corporate Seal)"

As a general rule, when trusts are created arrangements are made for the use and distribution of the income therefrom. We are unable to find any decisions (and none have been cited by either plaintiff or defendant) in which a trustor has attempted to provide for distribution of the corpus of the trust to the trustor in specified annual payments, without regard to the income from the trust.

It will be noted in the trust agreement that trustee had full control of the trust estate. The trustee could invest the corpus in any manner it deemed best or fail to invest the trust funds at all. The handling of the trust fund was left entirely to the discretion of the trustee, and trustor has no control over the sources or the amount of income.

The Bureau of Internal Revenue, prior to the commencement of this action, held the trust was in effect an annuity and required taxpayer to report it as such in her 1950 income tax return. The Bureau used the annuity formula and determined the tax due was $57.27. The taxpayer, although disagreeing with the contention of the Bureau of Internal Revenue, paid the tax and thereafter filed a claim for refund of the tax so paid. When the claim was not acted upon within six months, taxpayer commenced this action.

After suit was filed and defendant served, the government abandoned its position that this was an annuity but now asserts that it is a short term reversionary trust, within the meaning of Section 29.22(a)–21(c) (1) of Regulation 111, because $300 of the trust corpus was to be returned to the trustor each year.

In 1940, the Supreme Court, in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, handed down a most controversial decision relative to short term trusts. The Court said, 309 U.S. at page 338, 60 S.Ct. at page 558:

"* * * The failure of Congress to adopt any such rule of thumb for that type of trust must be taken to do no more than to leave to the triers of fact the initial determination of whether or not on the facts of each case the grantor remains the owner for purposes of § 22(a)."

Hardly had the Clifford decision been promulgated when repercussions were heard. It has been said that few tax problems in recent years have caused as much litigation as this one decision. Cory v. Commissioner of Internal Revenue, 3 Cir., 126 F.2d 689.

In 1941 the United States Supreme Court, in Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055, rendered a decision which has in part caused continued litigation. The Supreme Court said, 312 U.S. at page 583, 61 S.Ct. at page 762:

"* * * It is enough that we find in the present case that the taxpayer, in point of substance, has parted with no substantial interest in property other than the specified payments of income which, like other gifts of income, are taxable to the donor. Unless in the meantime the difficulty be resolved by

statute or treasury regulation, we leave it to future judicial decisions to determine precisely where the line shall be drawn between gifts of income-producing property and gifts of income from property of which the donor remains the owner, for all substantial and practical purposes."

As a result of extensive litigation occasioned by the uncertainties in the application of Helvering v. Clifford, supra, the Treasury Department at the end of 1945 accepted the Supreme Court's invitation and issued regulations specifically defining the factors which demonstrate the retention by a grantor of such complete control over a trust that he is taxable on the income therefrom. By Treasury Decision 5488 there was added to Regulation 111, § 29.22 (a)–21, and by Treasury Decision 5567 the section was amended. Their purpose was to clarify the application of the Clifford doctrine by defining and specifying, in the light of prior judicial decisions, those factors which demonstrate the retention by the grantor of such complete control of a trust that he is taxable on the income therefrom under § 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a).

Section 29.22(a)–21 [as added by Treasury Decision 5488 (1946–1 Cum.Bull. 19) and amended by Treasury Decision 5567 (1947–2 Cum.Bull. 9)] recites the following:

"*Trust income taxable to the grantor as substantial owner thereof.—*

"(a) *Introduction.*—Income of a trust is taxable to the grantor under section 22(a) although not payable to the grantor himself and not to be applied in satisfaction of his legal obligations if he has retained a control of the trust so complete that he is still in practical effect the owner of its income. (Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.) In the absence of precise guides supplied by an appropriate regulation, the application of this principle to varying and diversified factual situations has led to considerable uncertainty and confusion. The provisions of this section accordingly resolve the present diffi-

culties of application by defining and specifying those factors which demonstrate the retention by the grantor of such complete control of the trust that he is taxable on the income therefrom under section 22(a). Such factors are set forth in general in paragraph (b) and in detail in paragraphs (c), (d) and (e), below.

"(b) *In general.*—In conformity with the principle stated in paragraph (a) above, the income of a trust is attributable to the grantor (except where such income is taxable to the grantor's spouse or former spouse under section 22(k) or 171) if—

"(1) the corpus or the income therefrom will or may return after a relatively short term of years * * *

* * * * * *

"(c) *Reversionary interest after a relatively short term.*—Income of a trust is taxable to the grantor where the grantor has a reversionary interest in the corpus or the income therefrom which will or may reasonably be expected to take effect in possession or enjoyment—

"(1) within 10 years commencing with the date of the transfer, * * *"

We are not concerned with subsection (c) (2), inasmuch as the government in its brief contends that the trust in question comes within subsection (c) (1) and is not alleging that subsection (c) (2) applies.

It is admitted by the government that if it were not for the fact that taxpayer's other contributions to charities in 1950 exceeded fifteen percent of her adjusted gross income, she would not be taxable on the income here in question, because it would be considered as a charitable contribution by her of income under section 23(*o*) of the Internal Revenue Code, 26 U.S.C.A. § 23(*o*).

In beginning our discussion of this case, we might use the words of Justice Clark of the Third Circuit in Cory v. Commissioner of Internal Revenue, 126 F.2d 689, 690, who said:

"The case at bar is but a short stanza in an epic entitled 'The Use of the

Short Term Trust for Tax Avoidance.' "

Our problem here is to determine whether or not the facts in the case at bar bring the case within the Clifford rule.

In Belknap v. Glenn, D.C., 55 F.Supp. 631, at 634, the Court says, in discussing short term trusts:

" * * * It is apparent from these various decisions that each case must be decided upon its own particular facts."

The Supreme Court, in the Clifford case, supra, also said that the answer to the question

"must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation." [309 U.S. 331, 60 S.Ct. 556.]

To quote again from Cory v. Commissioner of Internal Revenue, supra, a writer in the Michigan Law Review says:

" 'According to the Court, the trust device will be ignored and the settlor will be treated as owner for the purposes of § 22(a), whenever the terms of the trust and circumstances surrounding its operation show that the creation of the trust did not effect any substantial change in the *dominion* and *control* of the settlor. No one fact is decisive, but the following are deemed relevant to support a finding that the settlor is to be treated as owner for tax purposes: a trust of short duration for the benefit of the settlor's wife or close relative, in which the right of ultimate enjoyment is reserved to the settlor and in which the settlor is trustee with broad powers of investment and reinvestment.' "

In Farkas v. Commissioner of Internal Revenue, 5 Cir., 170 F.2d 201, at page 203, the Court says:

"No right to control, or to revoke, the trust or to receive the income therefrom was retained in the settlor, such as provoked the doctrine announced in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, and similar cases. The fact that the thing assigned

could revert to the settlor upon the death of the trustee, standing alone, would not, in our opinion, render the income from the trust taxable to the settlor. We know of no case holding otherwise.

"In the absence of the power to command or to enjoy the income or any benefits therefrom left in the settlor, and in the absence of any finding on the part of The Tax Court—or in the absence of any evidence to support a finding—that the transfer was but a sham or a shadow having no substance, whereby taxpayer sought to evade taxes on income that in reality belonged to him, it is essential for us to decide whether the transfer in question was of an equitable interest in a trust estate as defined and adjudged in Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, * * *.

" * * *, but those cases (Helvering v. Clifford and Harrison v. Schaffner, supra) have made it clear that such a disposition of such property must be substantial and not merely colorable, and that when a transfer retains in the transferor the characteristics of ownership, or is only for a day, a month, or a year, it will be regarded as if no disposition had been made at all. The test here, therefore, is whether or not the transfer, which: (a) could run for approximately ten years, or until the death of the trustee, or for a considerable portion of the life expectancy of the donor; (b) was irrevocable by the settlor; (c) prohibited the settlor from obtaining any of the income or accumulations thereof; (d) gave the trustee absolute direction and control of the disposition of the income among the beneficiaries; (e) in no wise relieved the settlor of any duty of support of members of his family; and (f) retained in settlor no characteristics of ownership; was substantial within the contemplation of the Schaffner case."

The Court, speaking in Belknap v. Glenn, D.C., 55 F.Supp. 631 at 633, has this to say in regard to the matter:

"\* \* \* In the Clifford case it was held that taxability to the creator of a trust of income flowing from that trust was not to be determined by technical considerations or the niceties of the law of trusts or conveyances but depended upon whether or not the grantor after the trust has been established was still to be considered as the owner of the corpus of the estate; that if in substance his control over the corpus was in all essential respects the same after the trust was created as it was before he in reality retained the full enjoyment of all rights which he previously had in the property and the income from such corpus, even though held in trust, was properly taxable as income to him. \* \* \* A dominant, although not decisive, feature in each case appears to be the duration of the trust. \* \* \* Another item of controlling importance appears to be the relationship of the beneficiary to the settlor with particular reference to the family unit and the obligation of the settlor to support such a beneficiary within that economic unit. \* \* \* Another element of material consideration appears to be the control of the creator over the trustee and the reserved power in the creator to manage the trust either by the terms of the trust instrument or the power over the trustee. \* \* \* The ultimate reversion to the estate of the grantor has no material bearing on the question involved."

Quoting from the case of Shapero v. Commissioner of Internal Revenue, 6 Cir., 165 F.2d 811, at page 812:

"The relevant regulation is found in Treasury Regulations 111. \* \* \* The caption is 'Trust Income Taxable to the Grantor as Substantial Owner Thereof.' The introductory paragraph (a) reads, as follows: 'Income of a trust is taxable to the grantor under section 22(a) although not payable to the grantor himself and not to be applied in satisfaction of his legal obligations if he has retained a control of the trust so complete that he is still in practical effect the owner of its income. \* \* \* The provisions of this section accordingly resolve the present difficulties of application by defining and specifying those factors which demonstrate the retention by the grantor of such complete control of the trust that he is taxable on the income therefrom under section 22(a). \* \* \*'

\* \* \* \* \* \*

"Without considering the Treasury Decision in controversy, the tax court concluded that the bundle of rights retained by the petitioner and the benefits enjoyable by him were 'such that there was no substantial change in his economic position as a result of the transfers in trust.' \* \* \*

\* \* \* \* \* \*

"Edison v. Commissioner, 8 Cir., 148 F.2d 810, 814, furnishes further authority for the conclusion which we have reached. The Court of Appeals said: 'As we observed in Stockstrom v. Commissioner of Internal Revenue, 8 Cir., 148 F.2d 491, and Funsten v. Commissioner, 8 Cir., 148 F.2d 805, under our reading of the Supreme Court decisions, an owner who makes a gift in trust of property may still be taxable on its income, notwithstanding the legal effectiveness of the gift, where he has retained such control of the incidents and elements of his previous ownership, viewed in their practical significance in relation to the specific dedication, as to leave him in economic substance and result with what he previously had and enjoyed in the family situation. And, even though he may part also with control of the corpus of the gift as well as legal title, he equally may be taxable on the income which the property produces, where he has retained substantially his previous power, viewed in its practical significance in relation to the specific dedication, to command the disposition of the income.'"

However, the Ninth Circuit has spoken on this matter, and it seems that we are controlled by the decision of this circuit in Hawaiian Trust Co. v. Kanne, 172 F.2d

74. The income of a trust assigned by a Mrs. Sherman was taxed to her rather than the assignee, on the theory that she retained the entire reversion in the trust funds. The Court said, 172 F.2d at page 75, after referring to various cases:

"It is thus made clear that the important consideration in determining when an assignor shall be released from the tax is whether or not control over and power to command the income has been relinquished and not merely the parting with a technical equitable interest in trust property.

\*    \*    \*    \*    \*    \*

"\*  \*  \*  We understand the rule laid down in the cases considered by the Supreme Court in connection with the Blair and Schaffner cases to be that an assignee may be taxable on the income of an assigned trust property if he thereby obtains an equitable property interest, but this is subject to the limitation that the assignor has not retained such control over the property that he has not parted with a substantial interest.

"\*  \*  \*  Equitable interests need not be assigned in their entirety in order to give the assignee his property rights.  \*  \*  \*

"\*  \*  \*  It is also important to consider that the assignments were not made within a family economic unit, and there existed no legal obligation on the part of the taxpayer to support the recipients of the benefits of the assignments.  \*  \*  \*

"\*  \*  \*  In the instant case the transfer was substantial because of the period and character thereof.  \*  \*  \* We conclude that the taxes should not have been assessed to the assignor."

■ One of the matters which seems to be emphasized time and time again by the courts is the family unit. When a trust is set up for the benefit of children or of close relatives, such trust should be scrutinized more closely than a trust made for the benefit of those outside the family group. As the Court said in Belknap v. Glenn, supra,

"\*  \*  \*  Another item of controlling importance appears to be the relationship of the beneficiary to the settlor with particular reference to the family unit and the obligation of the settlor to support such a beneficiary within that economic unit."  [55 F.Supp. 634.]

The Ninth Circuit, in Hawaiian Trust Company v. Kanne, supra, says:

"\*  \*  \*  It is also important to consider that the assignments were not made within a family economic unit, and there existed no legal obligation on the part of the taxpayer to support the recipients of the benefits of the assignments."

■ If this is the only criterion by which the court may reach a conclusion that the income is taxable to the trustor, then there is no basis for such a finding in the case at bar. However, another item emphasized by the courts is dominion and control by the settlor. In the case at bar the settlor certainly did not have any dominion and control, except that she was to receive from the corpus $300 per year for as long as she lived or until the corpus was exhausted.

Another item stressed is the right of the trustor to receive the income from the trust. There is no contention by the government that trustor was to receive any part of the income, as the trust itself specifically states that the entire income should be retained by the trustee.

In Farkas v. Commissioner of Internal Revenue, supra, was discussed the absence of the power to command or to enjoy the income or any benefits therefrom. Certainly in the case at bar the settlor did not enjoy the income or any benefits therefrom. Also, the Court talks about the transfer being "a sham or a shadow having no substance". We do not believe this applies to the trust here before us, because certainly there was a valid transfer, and we do not believe the government can claim the transfer here was "a sham or a shadow having no substance".

The same Court says:

"\*  \*  \*,  but those cases [Helvering v. Clifford and Harrison v. Schaff-

ner] have made it clear that such a disposition of such property must be substantial".

We do not know whether the government, in the case at bar, contends that the assignment was not substantial.

The Ninth Circuit in the Hawaiian Trust Company case, supra, says that for a trustor to be held liable for tax upon the income of the trust, trustor must have parted with a substantial interest. In the case at bar the trustor parted with $5,000 absolutely. However, she reserved the right to have returned to her $300 per year as long as she lived or until the corpus was exhausted.

It is admitted by the parties that the life expectancy of trustor herein on January 1, 1950, was, for annuity purposes, 7.49 years; for life insurance purposes, 3.91 years, and for statistical purposes, 4.56 years. Under these circumstances can it be said that trustor did not part with a substantial interest?

The government's whole case seems to rest upon the theory that trustor was to have returned to her $300 each year for the remainder of her life, or until the corpus of the trust was exhausted.

In Belknap v. Glenn, supra, the Court says:

"* * * The ultimate reversion to the estate of the grantor has no material bearing on the question involved."

And the Ninth Circuit, in the Hawaiian Trust Company case, supra, says:

"* * * Equitable interests need not be assigned in their entirety in order to give the assignee his property rights."

And quoting once more the Ninth Circuit in the Hawaiian Trust Company case:

"In the instant case the transfer was substantial because of the period and character thereof. * * * We conclude that the taxes should not have been assessed to the assignor."

Such is the order in the case at bar.

Counsel for plaintiff will prepare findings of fact, conclusions of law and judgment in conformity herewith, to be presented to the Court not later than May 5, 1952.